Hitchcock, J.
The object of the complainant in this case, is to enjoin the collection of a special tax levied by tho city council oí *485 Cincinnati, to defray the damages and expense of widening Lower Market street in said city. In the case of Burnet v. Corporation of Cincinnati, 3 Ohio, 73, it was held that equity may interpose by injunction to stay sale for similar taxes, and under the authority of that case we hold that the matter in controversy is properly before us for an adjudication.
The defense relied on in this case is, that the tax complained of was assessed by the city council, in accordance with city ordinances, enacted pursuant to its act of incorporation. If such be the fact, the complainant must fail. Whether it be so or not, is the real question to be decided.
By section 2 of the act of March 16, 1830, “further to amend the act to incorporate and establish the'city of Cincinnati, and for revising,” etc., power is given to the city council “ by ordinance to open, widen, straighten, or extend any street, lane, alloy, or market space, and to lay out, review, straighten, or extend, any corner or public landing, ‘whenever they may be of opinion that the public good of the citizens may require the same to be done, and to condemn and appropriate for that purpose any real estate necessary for such improvement, by making the owners compensation *for the value thereof, or for the damages they may sustain thereby,” etc. The council are further empowered to make any ordinance, not inconsistent with the act to ascertain damages and benefits which may accrue to the real estate “in the section or sections in the vicinity,” through which the improvement may be made, “or by going beyond the vicinity, when in their opinion it shall be just and equitable so to do, and to provide for the final adjustment of the same by the assessment and collection of a special tax from the real estate, bounding on and in the vicinity of such street,” etc. “ Provided that the city council shall provide, by ordinance, for the review of any assessment, or any part thereof, which may be made under the provisions of this section, by the appointment of two freeholders on the part of the city, two by the parties aggrieved, and the fiftji by the four thus appointed.”
It was thus made the duty of the council, to provide, by ordinance, for the erection of a tribunal, which should finally adjudicate between the city and any individual or individuals, who might feel themselves aggrieved by any valuation or assessment made by persons appointed by the city alone. And any individ *486 ual or individuals aggrieved were to be secured in the right of selecting two of the persons who should compose this tribunal.
On May 29, 1839, soon after the aforesaid amendatory act, the city council passed an ordinance upon this subject in which tho manner in which streets, etc., might be laid out or widened, was prescribed; and that the damages and benefits should be ascertained and assessed by three freeholders of the city, “to bo appointed by the city council, if application bo made for that purpose within six months from the day of establishing the same,” etc.; and it is made tho “ further duty of such freeholders -to return their proceedings, without delay, to the office of the city clerk, who shall file the same forthwith.” Then follows a proviso in these words: “Provided, That if any party shall feel himself or themselves aggrieved by any such assessment or valuation, *and shall communicate the same to the city council in writing, within four weeks from the time of filing the same, together with the names of two freeholders of said city to act on his or her part and behalf, said city council shall appoint two freeholders on the part of the city for that purpose, and these four shall aj)point a fifth, whose duty it shall be, under oath or affirmation to be taken by them before any person duly authorized, to review the said assessment or valuation, or any part thereof, and to report their proceeding without delay, to the city council, who shall take such steps by resolution or otherwise, as may be proper to carry into effect the review so made.”
This proviso is in strict accordance with the amendatory act aforesaid, and if carried into effect in good faith, there could be no great danger but that substantial justice would be done. The citizen whose property was taken for the public use would be likely to receive a compensation as adequate, as if the damage had been assessed by tho jury of the country. He who felt that his property had been improperly assessed, might be as sure of obtaining justice before such a tribunal, as before any other that could be constituted.
On July 14, 1840, the city council passed another ordinance, amendatory to the one above referred to, in which it is provided that should a review of any assessment be demanded or required, notice should be given to all interested in the assessment, that there will be a review of the assessment, and calling upon them to meet at a certain time and place,'and choose two disinterested *487 freeholders of the city as assessors on their part, and transmit the same forthwith in writing to the city council, whereupon it was made the duty of the city council to appoint two freeholders on the part of the city, and the four freeholders were to appoint a fifth, who, after being duly sworn, “ should proceed to investigate said premises and assessment, and shall make a new assessment and return the same to the city council, which assessment, when so made, shall be final in the premises.”
*These ordinances have been before the court at the present term, in the case of Combs v. Cincinnati, in which case it was decided that this ordinance of July, 1840, was notin accordance with the spirit of the act of incorporation, and was therefore inoperative.
In addition to the reasons assigned in that case why it should be held to be inoperative, it may, with propriety, be said that under this ordinance, a case might arise where the right of demanding a review would be utterly denied to a party aggrieved. This ordinance, although it professes to provide for a review, has an entirely different effect. The freeholders are bound to make a new assessment, not to correct or equalize the former. Although but one of a great number of persons is dissatisfied with the former assessment, yet if he requires it a new one must be made. And it might so happen that one who was not assessed at all before, would be brought in by this assessment, and as this is declared to be final, such person would be deprived of the privilege of review intended to be secured to him by the statute. Neither'by the statute, nor by the ordinance of May, 1839, could it have been intended that any new assessment should be made except as to such persons as feel themselves to be aggrieved. At least, wo understand such to bo the proper construction of those two enactments.
Now what are the facts of this ease? On February 5,1840, the council passed an ordinance for widening Lower Market street, and on the 12th day of the same month appointed three freeholders to estimato the damages and assess the benefits. Those freeholders, on th© 9th of April, reported that they had awarded to Arthur Martin damages to the amount of $100, and Joseph Simmonds $200, making the whole amount of damages $300.
To meet these damages they assessed benefits as follows: to James H. Caldwell, $250 ; to Thomas Jordan, $25; and to Mclntire, $25. A special tax was to be levied upon the property of these three individuals, in these respective ^amounts, and no *488 other persons were assesed at all. This report was adopted and confirmed by the council, on April 15, 1840.
On the 27th of April, Arthur Martin petitioned for a review, and freeholders were appointed according to the act of incorporation, and according to the then existing ordinance. On the 14th of May, Samuel J. Browne, who had a reversionary interest in the property condemned, asked a review, and freeholders were appointed. On the 21st of May, the freeholders appointed on the application of Martin, made their report, which was referred back to them, to assess benefits as well as damages, and by whom the same should bo paid. No further report from these freeholders was ever made.
Why this report should have been referred back I do not understand. There does not appear to have been any complaint from those who were assessed for benefits, they were content. Martin and Simmonds had sustained damages, and if the reviewers supposed the damages were greater or loss than had been awarded to them, it was their duty so to report. By a fair construction of the act of incorporation, nothing further could have been required of them. Tho council seems to have gone upon the hypothesis, that the damages awarded and benefits assessed must at all times be equal. And that if tho damages awarded to a particular individual were increased by reviewers, benefits to meet this increase must be assessed either upon those who have been already assessed or upon some other person or property. I'do not, however, see any necessity or propriety of such proceeding. The original assessment must continue until changed in pursuance of a review asked by some person affected thereby. If eventually the damages awarded should exceed these benefits, the excess must bo made up from the city treasury. In truth tho city treasury must, in the first instance, bo liable for tho entire damages.
On July 14, 1840, the amendatory ordinance was adopted, which has already been decided to be in contravention *of the spirit of tho act of incorporation. By this ordinance the principle which seems to have operated with tho city council, of making damages and assessments equal each other, could without any difficulty have been carried out. For, by this ordinance, every new set of freeholders must of necessity make out an entire now valuation and assessment, regardless of what had been before done.
*489 After the enactment of this ordinance, on October 27, 1841, almost two years after the ordinance for widening the street, the council rescinded all their previous appointments, gave notice to all interested to meet in the council chamber, at a particular time specified, ana select two freeholders as reviewers. But- one individual, however, attended, and made this selection. Two freeholders were appointed by the council, and these four selected a fifth man. They wore sworn and made a new valuation and assessment, and their report was accepted by the council. By this assessment the damages originally estimated at §300 are increased to §5,500, and the benefits assessed at §5,530.04, being a sum sufficient to satisfy all the estimated damages and accruing expenses. This valuation and assessment was made without regard to the valuation and assessment originally made. It is to affect different property and different persons, and still it is by tho ordinance declared to be final and conclusive.
By this last proceeding the lot of the complainant on Lower Market street is assessed at §200, and a special tax is levied to that amount. Neither this lot nor its owner were originally assessed by the three freeholders appointed by tho city council, nor had he requested any review. But by the reviewing freeholders this assessment is for the first time made, and the complainant is deprived of a right intended to be secured to every individual— the right of having a review by a board, a part of whose members have been selected by himself.
*Under these circumstances, it seems to the court that this special tax was levied without the authority of law, and against the spirit, intent, and meaning of the before-recited act of incorporation and the ordinance of May 29, 1839. It was levied, it is true, in accordance with the ordinance of July, 1840, but wo hold that ordinance to be unauthorized by the act of incorporation, and therefore void.
The complainant is entitled to the relief sought, and the collection of said special tax will be perpetually enjoined, in accordance with the prayer of the bill.